## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SANDRA BLANEY,

      Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social
Security,

      Defendant.

No. 18-cv-12009-ADB

| 03/31/2020 | view30 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered. ORDER ON REPORT AND RECOMMENDATIONS The Court adopts and accepts Magistrate Judge Cabell's report and recommendation, [ECF No. 28 ], which Defendant has not opposed. Accordingly, Plaintiffs Motion to Reverse, [ECF No. 13 ], is <u>GRANTED</u> and the matter is remanded for further proceedings as outlined in the report. Defendant's Motion to Affirm, [ECF No. 16 ], is therefore <u>DENIED</u>. Plaintiff's Motion to Remand, [ECF No. 19 ], is also <u>DENIED</u>.(McDonagh, Christina) (Entered: 04/01/2020) |
| --- | --- | --- |

.

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE ACTING COMMISSIONER, DEFENDANT'S MOTION TO AFFIRM, AND PLAINTIFF'S MOTION TO REMAND

CABELL, U.S.M.J.

## I.   <u>INTRODUCTION</u>

Plaintiff Sandra Blaney seeks an order reversing a decision of the Acting Commissioner (the Commissioner) of the Social

Security Administration (SSA) denying her application for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) based on physical and mental disabilities. (D. 13). Independently, she moves for remand on the ground that the administrative law judge (ALJ) who heard her case was not properly appointed. (D. 19). The Commissioner seeks an order affirming her decision (D. 16) and opposes the motion to remand. The motions have been referred to this court for a Report and Recommendation.

For the reasons stated below, I conclude that the ALJ's decision was not supported by substantial evidence and recommend that the plaintiff's motion to reverse be <u>GRANTED</u>, that the matter be <u>REMANDED</u> for further proceedings, and that the Commissioner's motion to affirm be <u>DENIED</u>. I recommend further that the plaintiff's separate motion to remand on the ground that the ALJ was not properly appointed be <u>DENIED</u>.

## II. PROCEDURAL HISTORY

The plaintiff applied for DIB and SSI on September 16, 2015, with an onset disability date of September 11, 2002. (SSA Administrative Record of the proceedings, pp. 228, 235 (R. ___)). For purposes of her DIB claim, Blaney had to prove a disability by her date last insured, December 31, 2007. (R. 18). The SSA denied the application for both benefits twice, first on February 26, 2016, and then again on September 14, 2016, following Blaney's

2

request for reconsideration. (R. 151, 167). On July 12, 2017, an administrative law judge (ALJ) convened a hearing and subsequently found on October 6, 2017 that Blaney was not disabled within the meaning of the Social Security Act (Act) for purposes of either DIB or SSI. (R. 15). On July 23, 2018, the Appeals Council denied Blaney's request for review of the ALJ's decision, making that decision the final decision for purposes of this appeal. (R. 1).

## III. FACTS

### A. Plaintiff's Background

Blaney completed 9th grade and did not obtain a GED. (R. 52). She previously worked preparing and delivering food to senior citizens and as a financial clerk in a grocery store. (R. 55, 255). She was 33 years and six months at the date of her alleged onset of disability (September 11, 2002), and 46 years and 11 months at the time she applied for benefits in September 2015. (R. 93). Blaney claimed the following disabilities: severe cervical disc and lumbar back disease; depression; anxiety disorder; adjustment disorder; insomnia; and opioid dependence (in remission).

### B. Relevant Medical Evidence

Although Blaney claimed both physical and mental impairments, the present matter relates principally to her claimed mental

limitations. The court does summarize some physical health related evidence but focuses mostly on the mental health evidence as those are the medical records that appear most relevant to her claims of error and requested relief.

### 1. Physical Health Evidence

The ALJ reviewed evidence from Blaney's treating physicians and state medical consultants on Blaney's back impairment. For purposes of her DIB claim (through December 31, 2007), the ALJ found Blaney to have a severe impairment of degenerative disc disease of the lumbar spine. (R. 18). For purposes of her SSI claim, the ALJ found Blaney to suffer from the additional severe physical impairments of degenerative disc disease of the cervical spine. For purposes of both her DIB and SSI claims, the ALJ determined Blaney's spinal impairment to be severe and that Blaney was limited to two hours of standing or walking per an eight-hour workday. Blaney does not challenge these findings. (R. 18, 23, 27).

### 2. Mental Health Evidence

Blaney did not submit any records relating to her mental health treatment prior to the last date of her eligibility for DIB, *i.e.*, December 31, 2007. The ALJ thus found that she did not suffer from a mental health impairment for purposes of DIB. Blaney does not challenge this finding; the evidence summarized is the mental health evidence in furtherance of Blaney's SSI claim.

In September 2015, the plaintiff visited her family physician, Jeffrey Phillips, M.D., to discuss applying for benefits and seeing a mental health counselor. (R. 476-78). Dr. Phillips noted that Blaney had a "depressed affect and [was] anxious" and prescribed her sertraline. (R. 477-78).

Blaney did not begin seeing a regular mental health therapist until August 2016. In the meantime, in connection with her initial application for disability benefits based on depression, Blaney saw state psychological consultant Judith Bevis, Ph.D., for a psychodiagnostic interview in January 2016. (R. 532). Blaney reported that her family physician recently prescribed her Zoloft, but she did not believe that it was working. She also reported difficulty with motivation and being around too many people. (R. 532-33).

Dr. Bevis found Blaney well-oriented to reality and forthright in her answers, and she had no difficulty following a three-step command. In mental status testing, however, Blaney showed difficulty with short-term memory and spelling words forwards and backwards, which provoked her anxiety. (Id.).

Blaney also discussed a 15 to 18-year history of abusing painkillers, particularly Percocet and methadone, to deal with her back pain. (Id.). She expressed that these painkillers were "her life" and she described no desire to discontinue them. (Id.).

Dr. Bevis found it likely that Blaney suffered from recurrent

major depression but felt that her most significant problem was her "severe" opiate use disorder. (R. 536). Dr. Bevis also noted that Blaney did not appear competent to manage her finances in light of her ongoing drug use. (Id.).

In February 2016, state Disability Determination Services (DDS) psychologist Celeste Derecho, Ph.D., reviewed Dr. Bevis' report and Blaney's records in connection with a mental disability assessment. (R. 97-99). Dr. Derecho found Blaney to suffer from affective disorder but did not consider it primary or severe. She reported that it would have only mild effects on Blaney's functioning. Dr. Derecho continued that in the absence of treatment records from a mental health professional, there was no evidence that Blaney had any mental disability independent of her opioid use. (R. 98-99).

In March 2016, Blaney began working with a physician at Column Health to help her reduce her dependence on opioids. (R. 540, 584). In August of the same year she began seeing Claudia Griffith, L.C.S.W., also at Column, for psychotherapy. (R. 620). Griffith completed a questionnaire, cosigned by Daniel Karlin, M.D., in connection with Blaney's request for reconsideration of benefits. Griffith stated that Blaney struggled with immense anxiety and mood fluctuation that could prevent her from setting daily routines and concentrating. However, Griffith also noted that Blaney was participating in an addiction recovery group where

she showed great leadership and excellent communication skills. (R. 555-59).

In September 2016, DDS psychologist Joseph Whitehorn, Ph.D., reviewed Griffith's submission in connection with Blaney's request for reconsideration. He found that it was not consistent with Blaney's self-reported ability to do most activities of daily living, pay attention "I guess as long as needed," and deal with authority figures. He therefore recommended no changes to Dr. Derecho's assessment that Blaney's mental impairments would have no more than a mild effect on her functioning. (R. 128).

Blaney continued to see Griffith as well as a physician for her opioid addiction, and a nurse practitioner for medication management. (R. 628-1008). In December 2016, Griffith completed a mental residual functional capacity (RFC) questionnaire indicating that Blaney would be unable to: meet competitive standards for completing a normal workday and workweek without interruption from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from superiors; be aware of normal hazards and take appropriate precautions; deal with the stress of semi-skilled or skilled work; or travel to unfamiliar places. Griffith also noted that Blaney was not able to cope with using public transportation. (R. 580-81).

Blaney attended therapy with Griffith until she left Column at the end of March 2017.  (R. 938).  Blaney continued to see her medication management nurse and opioid cessation physician but there are no records of psychotherapy in the record after March 21, 2017.  (R. 905).[1]

### 3. Evidence From the Administrative Hearing

The ALJ convened an administrative hearing on July 12, 2017. Blaney testified at the hearing regarding her mental limitations.

Regarding her opioid use, Blaney said she became addicted to painkillers during the course of her three back surgeries but had been in remission since February 2016.  When the ALJ asked Blaney how her life had changed in the past year, she replied, "Great. Unbelievable.  It's like—I feel like this person I was prior to doing things like that, you know?" (R. 61-62).

However, when the ALJ asked Blaney how she socialized with friends, she said that normally it was over the phone because she was not physically able to do activities like walk around a mall. She said her inability to get out more made her depressed.  Blaney also testified that she had not been to a movie theater or taken a trip in the last 10 years.  (R. 62-63).

Under questioning from her attorney, Blaney responded that she struggled with depression and anxiety and there were "quite a

---

[1] Blaney testified at the administrative hearing that she subsequently resumed treatment with a new therapist.  (R. 72).

few days" she stayed in bed.  (R. 68).  She also said she had difficulty sleeping because her mind was racing and that she napped most days.  (R. 69-70).  Concerning anxiety, she reported having a panic attack on a municipal bus and feeling anxious around any type of crowd, but she could interact directly with the cashier and the van driver for the senior services transportation group she used.  (R. 70-72).

The ALJ also took testimony from a vocational expert, based on three hypotheticals  First, based on evidence concerning Blaney's physical capabilities as of December 31, 2007, the ALJ asked the expert whether Blaney could perform any work assuming she could perform the full range of light work in a moderate noise environment such as an office but:

> could stand and walk only a total of two hours in an eight-hour workday; occasionally push and pull with her legs; climb stairs and ramps occasionally but never ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and should avoid hazards such as unprotected heights and moving mechanical parts; avoid more than occasional exposure to humidity, wetness, and extreme heat; and avoid all exposure to extreme cold and vibrations.  (R. 75-76).

The expert replied that Blaney would be qualified for modified light, unskilled work in which walking and standing would typically be less than two hours per day, such as a general office clerk, small product packer and sorter, and tagger and labeler.  (R. 76).

The ALJ then changed his hypothetical to add these additional

restrictions based on evidence submitted for Blaney's SSI claim
(from September 15, 2016 forward):

> an ability to reach overhead occasionally and to
> handle items frequently with the left non-
> dominant hand; only occasional ability to finger
> and feel with the left hand; a limitation to
> routine, simple tasks and occasional interaction
> with supervisors, coworkers, and the general
> public; and having the need to be off-task 5
> minutes per hour. (R. 77-78).

The expert responded that assuming only five minutes per hour were
off-task, Blaney could still do the previously identified jobs.
(R. 78).

Finally, the ALJ presented a third hypothetical asking the
expert to assume these greater physical limitations consistent
with the opinion of Dr. Phillips, the plaintiff's family physician:
that the individual had only occasional handling with the left
hand and occasional handling and fingering of the right hand, and
could never stoop except to sit or stand and also never crouch or
crawl. The expert said that these limitations would eliminate the
light, unskilled jobs. (R. 80-81).

In addition to these three scenarios, the ALJ asked the expert
to assume the second hypothetical with the additional
psychological limitations consistent with Ms. Griffith's opinion:
that the individual could not travel to unfamiliar places and would
be off task 15 percent of the time in a normal workday in addition
to regular breaks. The expert said all jobs would be eliminated

because 15 percent off-task was below basic productivity standards. (R. 82).

Blaney's attorney asked the expert if the individual in the first hypothetical could work assuming she would be absent two days per month, and the expert said that such absenteeism would likely be considered excessive and unacceptable. (R. 83-84). Likewise, the expert testified that if the person were off-task 10 minutes per hour instead of five, that would also be below basic productivity standards. (R. 84).

## IV. THE ALJ'S FINDINGS

On October 6, 2017, the ALJ found that Blaney was not disabled within the meaning of the Social Security Act. (R. 15). In reaching this determination, the ALJ applied the familiar five-step evaluation required by the regulations.

Step one considers whether the plaintiff is engaged in substantial gainful activity ("SGA"), because a claimant who is so engaged is not disabled. 20 C.F.R. § 404.1520(b). SGA is defined as work activity done for pay that involves performing significant physical or mental activity. 20 C.F.R. §§ 404.1572(a)-(b). The ALJ found that the plaintiff had not engaged in SGA since the alleged onset date of her disability, September 11, 2002. (R. 18).

Step two considers whether the plaintiff has a medically determinable impairment that is severe, or a combination of

impairments that is severe as defined by the pertinent regulations.
20 C.F.R. § 404.1520 (c).   A plaintiff who does not have an
impairment that is severe is not disabled.   Here, the ALJ found
that Blaney suffered from several severe impairments.   Through the
date last insured (December 31, 2007) she suffered from
degenerative disc disease of the lumbar spine.   Since the date of
her application for supplemental security income (September 16,
2015), she suffered from degenerative disc disease of the cervical
spine; obesity; and depressive, mood, affective, adjustment,
anxiety-related and post-traumatic stress disorders.   (R. 18).[2]
The ALJ found that these impairments "imposed more than a minimal
limitation on the claimant's ability to perform basic work
activities during the time period in question (20 C.F.R.
416.920(c))."  (Id.).

Step three considers whether the claimant's impairment or
combination of impairments is of a severity to meet or medically
equal the criteria of an impairment listed in 20 C.F.R. Part 404,
Subpart P, Appendix 1.   20 C.F.R. §§ 416.920(d), 416.925, and
416.926.   If so, the claimant is conclusively presumed to be
disabled.   If not, one moves to the next step.   The ALJ found that
the plaintiff's impairments did not meet or medically equal the

---

[2] The ALJ did not find the plaintiff's opioid dependence severe because treatment
notes consistently described the dependence as being in remission.  He also did
not find alleged right knee and left arm impairments to be severe.  (R. 18-19).
The plaintiff has not challenged these findings.

severity criteria of an impairment listed in the pertinent regulations and accordingly moved to step four. (R. 19-23).

Step four considers the claimant's residual functional capacity (RFC) to work and entails a two-part inquiry. In the first part the ALJ determines whether the claimant's RFC allows her to work at all, *i.e.*, whether she has the ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.920(f). In the second part the ALJ determines whether the applicant's RFC allows her to perform her past relevant work. 20 C.F.R. § 416.920(f). If the claimant has the RFC to do her past relevant work, she is not disabled. If she does not, the analysis proceeds to the fifth and final step, which entails asking whether there are any jobs in the national economy the claimant is capable of performing.

At the first stage of the step four inquiry the ALJ found that Blaney had the physical RFC to perform light work except that she could among other things stand and walk for only two hours per eight-hour workday. (R. 23, 27). As for her mental RFC, the ALJ found (with respect to her SSI claim only) that Blaney's RFC limited her to simple routine tasks and occasional interaction with supervisors, coworkers, and the general public. She would also need to be off-task five minutes per hour on average because of pain, changing position, or any other reason. (R. 27).

In determining Blaney's mental RFC for her SSI claim, the ALJ

gave little weight to the assessments of the state medical consultants, Dr. Derecho and Dr. Whitehorn, because a significant amount of mental health evidence was submitted after their reviews were completed. (R. 33). The ALJ also gave little weight to the opinion of Griffith, Blaney's treating mental health professional, because she was not an acceptable medical source, she provided no rationale or narrative for her assessment, and she merely checked boxes off on a form. (Id.). Instead, the ALJ relied on his own review of (1) Blaney's treatment records from Griffith, (2) the doctor treating Blaney's opioid dependence, Neeraj Rastogi, M.D., and the psychiatric-mental health nurse practitioner managing her medications, Anna Newman. While those records indicated some "waxing and waning of symptoms" (R. 34), the ALJ determined that Blaney generally was found to be well-oriented and with intact judgment and concentration, and her activities of daily living were not consistent with the degree of impairment she claimed. (R. 32-34).

The ALJ found at the second stage of the inquiry that because plaintiff had been out of work for several years, she had no past relevant work, and thus no RFC to perform her past relevant work. Accordingly, he continued to step five.

At step five, the ALJ considered whether there were any jobs in significant numbers in the national economy that Blaney could perform. Noting that he found her capable of performing light

work with a standing/walking limitation of two hours per day, he determined, based on the vocational expert's testimony regarding the first hypothetical, that she could perform the representative jobs of general office clerk, small product packer/sorter, and tagger and labeler. (R. 35). The ALJ further found each of these jobs existing in sufficient numbers in the national economy. (Id.). Therefore, he found that Blaney was not disabled.

## V. STANDARD OF REVIEW

A court reviews the findings of an ALJ only to determine whether the findings are supported by substantial evidence, and whether the correct legal standard was applied. *Teague v. Colvin*, 151 F. Supp. 3d 1, 2 (D. Mass. 2015). Substantial evidence to support a decision exists if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Id.* This court must keep in mind that it is the role of the ALJ, and not this court, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence. *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).

This court may affirm, modify, or reverse the ALJ's decision, but reversal is warranted only if the ALJ made a legal or factual error in evaluating the plaintiff's claim, or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ. *Roman-Roman v. Comm'r of Soc. Sec.*, 114

F. App'x 410, 411 (1st Cir. 2004). This court therefore must affirm the ALJ's decision if it is supported by substantial weight, even if the record could arguably support a different conclusion. *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987).

"The ALJ's findings of fact, however, 'are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" *McCoy v. Colvin,* No. 14-cv-30188-KAR, 2015 WL 4602011, at *2 (D. Mass. July 31, 2015) (quoting *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999)). Thus, if the ALJ made a legal or factual error, the court may reverse or remand for consideration of new material evidence or to apply the correct legal standard. *See Manso-Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir. 1996); 42 U.S.C. § 405(g).

## VI. ANALYSIS

Blaney challenges the ALJ's conclusion that she is not disabled on a number of grounds. She argues that the ALJ impermissibly made findings regarding her mental RFC without the support of any acceptable medical opinion. She argues relatedly that the ALJ's finding that there are jobs existing in significant numbers in the national economy that she can perform is not supported by substantial evidence to the extent that this finding relies on unreliable testimony from the vocational expert. She argues further that the ALJ failed to reconcile an inherent

discrepancy between his finding that Blaney could stand and walk for two hours a day and the vocational expert's opinion that she could perform only light work jobs. In addition, Blaney argues in a separate motion that remand is warranted because the ALJ was not properly appointed and thus was not authorized to adjudicate her claims.

Of these, the court agrees that the ALJ impermissibly based his mental RFC on his lay interpretation of the medical evidence. That error would warrant reversal and remand on its own but the error may have also led the vocational expert to offer unreliable testimony to the extent it was based on an RFC unsupported by the evidence. A remand to address these issues is appropriate.

## A. The ALJ's Decision was not Based on Substantial Evidence

Blaney notes that the ALJ (properly in her view) gave little weight to the mental health assessments of the state examiners in evaluating her mental RFC for her SSI claim. She contends, though, that he also disregarded or gave only little weight the only other mental health provider offering opinion evidence, meaning that he did not incorporate an expert's RFC assessment into his own RFC assessment and thus necessarily based Blaney's mental RFC on his own interpretation rather than on the evidence in the record. This, she argues, was error.

An ALJ is "generally not qualified to interpret raw medical data to determine a claimant's RFC." *Manso-Pizarro*, 76 F.3d at

17; *Beyene v. Astrue*, 739 F. Supp. 2d 77, 783 (D. Mass. 2010). Accordingly, if a claimant "has put her functional capacity sufficiently at issue," the ALJ must consider her claim and an expert's RFC evaluation is "ordinarily essential" in performing that function. *Manso-Pizarro*, 76 F.3d at 17; *Beyene*, 739 F. Supp. 2d at 83. As such, a determination of a claimant's RFC made without some basis in an expert's assessment is unsupported by substantial evidence and must be remanded to obtain further evidence. *Beyene*, 739 F. Supp. 2d at 83; *Perez v. Sec'y of Human and Health Servs.*, 958 F.2d 445, 446 (1st Cir. 1991). This principle is not absolute, however. When there is relatively little evidence of a severe impairment, "an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." *Manso-Pizarro*, 76 F.3d at 17; *see also Gordils v. Secretary of Health and Human Services*, 921 F.3d 327, 329 (1st Cir. 1990) (ALJ may make "common-sense determinations within the bounds of a lay person's competence" where record is otherwise devoid of an expert's RFC determination).

Here, there were three sources of an expert's assessment of Blaney's RFC but the ALJ essentially rejected all of them. First, as noted above, Drs. Derecho and Whitehorn, each a reviewing DDS source, rendered assessments in February and September of 2016, respectively. The ALJ gave little weight to their opinions that Blaney had no severe mental impairment because a significant amount

of evidence was submitted after they prepared their assessments and it established that Blaney's medically determinable impairments were "severe" within the meaning of the regulations. (R. 33).

In addition, LSCW Griffith opined in December 2016 that Blaney was, among other things, "seriously limited in her ability to understand, remember and carry out detailed instructions, set realistic goals or make plans, and respond appropriately to changes," "was unable to meet competitive standards" in the everyday workplace, and "had no useful ability to function with respect to using public transportation." (R. 577-84). The ALJ acknowledged that Griffith was a treating provider but gave her opinion "little weight" because (1) she was not an acceptable medical source; (2) she provided no supporting rationale or narrative statement and instead checked off boxes on a form; (3) did not discuss the abnormalities that would support the limitations she assessed; and (4) her limitations were in any event "inconsistent with the normal findings on multiple mental status examinations." (R. 33).

Putting aside whether the ALJ's assessment of each expert's opinion was reasonable[3], it is clear that the ALJ ultimately

_____

[3] It bears noting that at least two of the reasons the ALJ offered for giving Griffith's opinion little weight are debatable. First, although the ALJ noted that Griffith was not an acceptable medical source, that does not mean her evaluation of Blaney should have summarily been dismissed, particularly as it relates to the severity and functional effects of Blaney's mental impairment.

rejected all three sources of expert evidence and therefore necessarily determined Blaney's RFC without relying on an expert's assessment of her RFC. Consequently, this court must consider whether the evidence would suggest to a lay person that Blaney's impairments were mild and posed no significant restrictions. If so, the ALJ's decision must be affirmed. If not, however, remand would be appropriate so additional evidence could be considered. *Manso-Pizarro*, 76 F.3d at 17-18; *Beyene*, 739 F. Supp. 2d at 83.

Blaney submitted evidence of mental impairments, including among other things, diagnoses and treatment for depressive, anxiety-related and post-traumatic stress disorders, ongoing mental health treatment with "waxing and waning" of symptoms, and an inability to meet competitive standards in the workplace. The ALJ contrarily found that her treatment records in the aggregate reflected normal findings, noting that many of the same treatment records supporting the impairments noted above also reflected that the findings were not always acute, that Blaney herself presented as well groomed, that she was able to care for herself and for

---

*See Korfiatis v. Berryhill*, No. 18-cv-210-PB, 2019 WL 1110798, at *4 (D.N.H. Mar. 8, 2019); see also SSR 06-03p, 2006 WL 2329939, at *3 (recognizing that non-acceptable medical sources are increasingly performing jobs previously exclusive to acceptable medical sources). A non-acceptable medical source's opinion can even be given greater weight than that of an acceptable medical source. SSR 06-03p at *5. Second, although the ALJ stated that Griffith provided no narrative to support her assessment, the record, while arranged somewhat confusingly in this regard, reflects that Griffith did provide narrative answers to questions in her August 2016 assessment of Blaney and appended those answers to her December 2016 RFC questionnaire. (R. 555-57; 577-84).

others, and that there was no evidence in the record of any in-patient hospitalization due to a mental impairment during the relevant time period. (R. 31-32).

The Commissioner argues that the ALJ was entitled to make a lay interpretation of mild findings on mental examinations and cites to a number of cases in support. Those cases are not very instructive, however, because none of the ALJs in the cases cited rejected every medical opinion in the record in lieu of their own. *See e.g., Deane v. Colvin*, 247 F. Supp. 3d 152 (D. Mass. 2017) (ALJ gave substantial weight to a medical source statement from two mental health providers and significant weight to the examination reports of the psychologist who performed psychodiagnostic interviews); *Valentin v. Colvin*, No. 14-cv-14103-ADB, 2016 WL 1181660, at *6-7 (D. Mass. Mar. 25, 2016) (ALJ gave little weight to treating family physician's opinion on claimant's mental health but did rely on report of state agency physician as well as another treating physician); *DiAntonio v. Colvin*, 95 F. Supp. 3d 60, 70 (D. Mass. 2015) (ALJ gave some weight to state agency physicians).

But to the Commissioner's broader point, even accepting that an ALJ may rely on consistent reports of normal mental status upon examination, *see e.g., Priest v. Colvin*, No. 15-cv-00379, 2016 WL 7335583, at *2 (D. Me. Dec. 16, 2016), the record in this case is not so clear-cut as to make the ALJ's conclusions obvious. The

ALJ found Blaney's mental impairments to be severe. He also noted that her symptoms had waxed and waned during treatment and medical professionals in several examinations spanning the length of her treatment described her as anxious, uneasy, or irritable. (R. 585; 600; 609; 643; 727; 741; 787-88; 867; 818; 924; 990; 1000, 1002). Griffith also said Blaney exhibited "perseveration" and "flight of ideas," which are not layperson's terms. (R. 799; 764).

Against this backdrop, the court concludes that the ALJ was not qualified to make the plaintiff's mental RFC assessment on his own. Having rejected the three experts' assessment, he should have called out for the assistance of another one. Because he did not do so, remand is appropriate to allow that to happen.

Assuming the case is remanded, the court does not express any opinion about whether the conclusions the ALJ reached were correct. It may well be that Blaney retains the capacity to perform light work as he concluded. "Nor is it clear that additional consultative examinations are required; it may be enough that an expert reviews the record as a whole to evaluate [Blaney's] functional limitations, if any." *Sanabria v. Astrue*, No. 06-CV-11380-NG, 2008 WL 2704819, at *6 (D. Mass. July 9, 2008). It would appropriately be left to the discretion of the Commissioner whether to accept additional records or order additional examinations.

**B. Because the ALJ Gave the Vocational Expert an Improper Mental RFC, the ALJ Could Not Rely on the Vocational Expert's Testimony.**

Assuming the ALJ erred in determining Blaney's mental RFC, and then had the vocational expert base her testimony on that RFC, it naturally follows that the ALJ could not rely on the vocational expert's testimony to determine that Blaney could meet the requirements for the jobs the expert recommended. The court therefore also recommends that the ALJ conduct a new step five determination based upon the plaintiff's newly-determined mental RFC.

C. **Blaney Has Waived Her Argument That the ALJ Erred in Failing to Reconcile Her Stand/Walk Ability With Her Ability to Perform Modified Light Work.**

Blaney argues that the ALJ erred by failing to reconcile a discrepancy between her assessed ability to walk or stand for only two hours per day and the modified light jobs the vocational expert recommended. She notes that under 20 C.F.R. § 404.1567(b), light jobs almost always require substantially more than two hours of walking, particularly when lifting and carrying packages is involved. *See* SSR 83-10, 2013 WL 31251, at *6 (Jan. 1, 1983). She argues that the ALJ was obligated under SSA policy to obtain a reasonable explanation for the inconsistency between the vocational expert's testimony and the requirements of the recommended jobs as listed in the Dictionary of Occupational Titles

(DOT), a standard reference used by vocational experts and relied upon by the expert in this matter. (R. 82). *See* SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000). Had the ALJ sought this explanation, so Blaney argues, he might have realized the inconsistency and found her to be limited to sedentary jobs.

The Commissioner argues that Blaney has waived this argument because she failed to raise it with either the ALJ or the Appeals Council. The court agrees. Under First Circuit law, social security claimants are generally barred from raising arguments in federal court that they did not raise at the administrative level. *See Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001). Of note, another session of this court recently ruled in a similarly situated case that the claimant waived his DOT inconsistency argument where he did not object to the vocational expert's testimony or question the expert about the impairment at issue. *Mandarano v. Berryhill*, 372 F. Supp. 3d 1, 4 (D. Mass. 2019); *see also Glass v. Colvin*, No. 16-cv-10807-ADB, 2017 WL 1334294, at *13 (D. Mass. Mar. 23, 2017) (quoting *Sullivan v. Coleman*, No. 13-cv-12907-FDS, 2015 WL 1308695, at *13 (D. Mass. Mar. 24, 2015)) ("[c]laimants should not be permitted to scan the record for . . . conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative

hearing").

To be sure, Blaney argues that another, arguably similarly situated case warrants remand. In *Saeed v. Berryhill*, No. 16-cv-11928-ADB, 2018 WL 1243953 (D. Mass. Mar. 19, 2018), an ALJ had also found the claimant limited to two hours of walking or standing but able to perform certain light work. While noting that neither party had specifically raised the issue, the court remanded the case and directed the ALJ to consider the potential inconsistency between a two-hour walk/stand limitation and the lift/carry component of light work, which could require a person to lift and carry ten pounds for between two and two-third and five and one-third hours per day. *Id.* at *8. *Saeed* is distinguishable on the facts, however. The court stressed that it was not holding that the two-hour stand/sit limitation would always limit a person to sedentary work, nor that "the mere inconsistency between such a standing/walking limitation and a lift/carry capacity requires a remand," *id.* at *11, but instead determined that remand was the better course where the claimant was 50 and her advanced age could potentially affect the ALJ's determination. The court further noted that the claimant's attorney had asked the vocational expert whether every job he recommended accounted for the two-hour stand/walk limitation. *Id.* Such questioning did not occur here.[4]

---

[4] Blaney also argues that an exception to the general waiver rule exists where there is an obvious or apparent conflict between the DOT and the vocational expert's testimony, which "the ALJ is obligated to resolve . . . regardless of

## VII. MOTION TO REMAND

Finally, Blaney moves separately to remand on the ground that the ALJ who heard her case was not properly appointed to his position.  In support of her argument, she cites *Lucia v. SEC*, 138 S. Ct. 2044 (2018), in which the Supreme Court determined that ALJs within the Securities and Exchange Commission are "officers" within the meaning of the Appointments Clause, U.S. Const. art. 2, § 2, cl. 2.  The Commissioner, while not disputing Blaney's factual contention, argues that she is not entitled to relief because she failed to exhaust remedies where she did not raise the argument with the ALJ or the Appeals Council.  In turn, Blaney concedes that she did not raise this issue below but argues that issue

---

whether the claimant's attorney raises the issue."  *See* Memorandum and Order, *O'Neill v. Berryhill*, No. 16-cv-11835-MGM (D. Mass. Sept. 26, 2018).  In *O'Neill*, however, the court observed that the case did not "turn[] on whether a new issue may be raised in this court, but on whether the record demonstrates that the issue was, in fact, raised in the proceedings below."  *Id.* at 11.  The court found that although the claimant had not expressly raised whether her previous job at a pharmacy was a composite position, *i.e.,* a job containing significant elements of two or more occupations that therefore has no counterpart in the DOT, the vocational expert had identified the pharmacy position with two different codes, and the ALJ clarified that the two codes were actually part of one former position.  Thus, the record should have alerted the ALJ that he needed to consider whether the claimant's pharmacy job was composite, and the issue was not waived.  *Id.* at 12-13.  Here, both the ALJ and the vocational expert were focused on Blaney's limited ability to stand and walk.  The ALJ asked the vocational expert to assume a two-hour stand/walk limitation (R. 75), and as the ALJ added additional physical limitations for the vocational expert to consider, the expert responded that the light unskilled market would continue to be eroded because the plaintiff could stand and walk for only two hours per day.  (R. 81).  No one at the administrative hearing questioned whether the jobs the vocational expert identified as meeting Blaney's walk/stand limitations would impose requirements inconsistent with that limitation.

exhaustion is not required in this instance.

District courts within this circuit have consistently rejected the plaintiff's argument and held that Appointments Clause challenges must be exhausted at the administrative level. *See, e.g., Christy A.L. v. Saul*, No. 2:18-cv-00260-JDL, 2019 WL 2524776, at *3 (D. Me. June 19, 2019), Report and Recommendation adopted, 2019 WL 3459227 (D. Me. July 20, 2019); *Kelly v. U.S. Soc. Sec. Admin.*, No. 18-cv-00662-PB (D.N.H. June 7, 2019). This holding is consistent with the overwhelming majority of courts that have considered this issue. *See, e.g., Allen v. Berryhill*, No. 17-cv-3414, 2019 WL 1438845, at *13 (N.D. Cal. Mar. 31, 2019); *Johnson v. Berryhill*, No. 17-cv-1651, 2019 WL 1430242, at *14 (D. Conn. Mar. 29, 2019); *Fortin v. Comm'r of Soc. Sec.*, 372 F. Supp. 3d 558, 568 (E.D. Mich. 2019); *Perez v. Berryhill*, No. 18-20760-cv-Torres, 2019 WL 1405642, at *5 (S.D. Fla. Mar. 28, 2019); *Wreede v. Comm'r of Soc. Sec.*, No. 18CV164, 2019 WL 1324024, at *22 (N.D. Ohio Mar. 25, 2019); *Dianne S. P. v. Berryhill*, No. 17cv143, 2019 WL 1879256, at *2 (E.D. Va. Mar. 21, 2019); *Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341, 351-52 (S.D.N.Y. 2019); *Dierker v. Berryhill*, No. 18cv145, 2019 WL 246429, at *4 (S.D. Cal. Jan. 16, 2019), Report and Recommendation adopted, 2019 WL 446231 (S.D. Cal. Feb. 5, 2019); *Deidre T. v. Comm'r of Soc. Sec. Admin.*, No. 17-cv-650, 2018 WL 7823090, at *20 (N.D. Ga. Sept. 28, 2018); *but*

*see Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020) (exhaustion not required).

In keeping with the great weight of authority, and in the absence of a contrary ruling from the First Circuit, the court finds that the plaintiff has waived this argument. The motion for remand on this ground should therefore be denied.

## VIII.    CONCLUSION

For the reasons stated above, the plaintiff's Motion to Reverse (D. 13) should be <u>GRANTED</u> and the matter should be <u>REMANDED</u> for further proceedings as discussed herein. The Defendant's Motion for Order Affirming the Decision of the Commissioner (D. 16) should be <u>DENIED</u>. Finally, the Plaintiff's Motion to Remand (D. 19) should be <u>DENIED</u>.[5]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: March 16, 2020

---

[5] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).